CARLSMITH BALL LLP

| | |
|---|---|
| DUANE R. MIYASHIRO | 6513-0 |
| JOHN P. DOBROVICH, JR. | 8531-0 |

ASB Tower, Suite 2200
1001 Bishop Street
Honolulu, HI  96813
Tel No. 808.523.2500
Fax No. 808.523.0842
Email:  dmiyashiro@carlsmith.com
        jdobrovich@carlsmith.com

Attorneys for Defendant/Counterclaim Plaintiff
GENESYS TECHNOLOGIES, INC. AND TOSHIAKI
SUZUKI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EURUS GENOMICS, INC., a Delaware corporation, and DANA ICHINOTSUBO, | CIVIL NO.  06-00651 SOM-LEK |
| Plaintiffs, | COUNTERCLAIM; DEMAND FOR JURY TRIAL |
| vs. | |
| GENESYS TECHNOLOGIES, INC., a Japan corporation, and TOSHIAKI SUZUKI, | |
| Defendants. | |
| and | |
| GENESYS TECHNOLOGIES, INC., | |
| Counterclaim Plaintiff, | |
| vs. | [CAPTION CONTINUED] |

EURUS GENOMICS, INC. and DANA
ICHINOTSUBO,

　　　　　Counterclaim Defendants.

## COUNTERCLAIM

Comes now Counterclaim Plaintiff GENESYS TECHNOLOGIES, INC.

("Counterclaim Plaintiff") and for Counterclaim against Counterclaim Defendants

EURUS GENOMICS, INC. and DANA ICHINOTSUBO (hereinafter

"Counterclaim Defendants") alleges and avers as follows:

### JURISDICTION AND VENUE

　　　　1.　　　This Court has Jurisdiction over this Counterclaim pursuant to

28 U.S.C. §1332(a).

　　　　2.　　　This Court is the proper venue for this action pursuant to 28

U.S.C. §1341(a).

### PARTIES

　　　　3.　　　Counterclaim Plaintiff is a Japanese corporation licensed to do

business in the State of Hawaii with its principal place of business in Japan.

　　　　4.　　　Counterclaim Defendant Eurus Genomics, Inc. is a corporation

organized under the laws of the State of Delaware and has a principal place of

business located at 500 Ala Moana Boulevard, Suite 3-405, Honolulu, Hawaii

96813.

5.      Counterclaim Defendant Dana Ichinotsubo is a citizen of the State of Hawaii.

## GENERAL ALLEGATIONS

6.      In or about November 2004, representatives of Counterclaim Plaintiff traveled to Hawaii and met with Counterclaim Defendants about conducting business together.  At that time, Counterclaim Plaintiff was also introduced, by Counterclaim Defendant Ichinotsubo, to Edwin Cadman, M.D., Dean of the University of Hawaii John A. Burns School of Medicine, and Hawaii State Senator Robert Bunda, who both attested to the credibility of Counterclaim Defendants.

7.      Counterclaim Defendants represented to Counterclaim Plaintiff that Dr. Cadman was the Chief Executive Officer of Counterclaim Defendant Eurus Genomics, Inc.

8.      On or about February 15, 2005, Counterclaim Plaintiff entered into a written agreement (hereinafter "Project I") with Counterclaim Defendants, whereby Counterclaim Defendants agreed to provide specific research services to Counterclaim Plaintiff, for the total contract price of Five Hundred Thousand Dollars ($500,000.00 U.S.D.).  The services to be provided by Counterclaim Defendants included, but were not limited to, the procurement of between two

hundred seventy (270) to three hundred (300) Rheumatology patient DNA samples, but no less than two hundred seventy (270).

9.     The total contract price of Project I was to be paid by Counterclaim Plaintiff in three installments.

10.     The first installment, in the sum of Two Hundred Thousand Dollars ($200,000.000 U.S.D.) was to be made at the time of contract.

11.     The two remaining payments of One Hundred Fifty Thousand Dollars ($150,000.00 U.S.D.) each were contingent upon Counterclaim Defendants' performance and completion of certain services under Project I.

12.     On or about February 15, 2005, Counterclaim Plaintiff paid the first installment of Two Hundred Thousand Dollars ($200,000.00 U.S.D.) in accordance with its obligations under Project I.

13.     On June 21, 2005, Project I was thereafter amended (hereinafter the "Amendment") by agreement of the parties.

14.     The Amendment modified the schedule for Counterclaim Plaintiff  to tender the two remaining installment payments for Project I.

15.     The Amendment was based upon Counterclaim Defendants' representations, as expressly stated in the Amendment, that Counterclaim Defendants had collected more than seventy percent (70%) of the Project I Rheumatology DNA samples at that time.

16.     By signing the Amendment, Counterclaim Defendants represented to Counterclaim Plaintiff that more than seventy percent (70%) of the Project I Rheumatology patient DNA samples had been collected by Counterclaim Defendants.

17.     Under the Amendment, the second installment payment of One Hundred Fifty Thousand Dollars ($150,000.00 U.S.D.) for Project I was divided into two separate payments, of (a) One Hundred Thousand Dollars ($100,000.00 U.S.D.) due by June 30, 2005, and (b) Fifty Thousand Dollars ($50,000.00 U.S.D.) due at some later time to be negotiated by the parties.

18.     Under the Amendment, the due date for the final payment by Counterclaim Plaintiff for Project I was also left to be negotiated.

19.     On or about June 27, 2005, Counterclaim Plaintiff paid Counterclaim Defendants One Hundred Thousand Dollars ($100,000.00 U.S.D.) in accordance with the Amendment.

20.     On or about June 15, 2005, Counterclaim Plaintiff entered a second written agreement with Counterclaim Defendants (hereinafter "Project II") whereby Counterclaim Defendants agreed to provide additional research and analysis to Counterclaim Plaintiff.

21.     Under Project II, Counterclaim Defendants agreed to obtain all Rheumatology patient DNA samples and clinical data collected in Project I and

conduct further DNA analysis of the samples using a special Affymetrix DNA chip.

22.     Counterclaim Plaintiff agreed to the terms of Project II on Counterclaim Defendants' representations that seventy percent (70%) of the samples from Project I had been collected by Counterclaim Defendants.

23.     In or about June 2005, Counterclaim Plaintiff paid Counterclaim Defendants One Hundred Thousand Dollars ($100,000.00 U.S.D.) in accordance with its obligations under Project II.

24.     Counterclaim Defendants represented to Counterclaim Plaintiff that the University of Hawaii John A. Burns Medical School, under Dr. Cadman, was collecting DNA samples for Project I and Project II.

25.     On or about June 30, 2005, Counterclaim Plaintiff entered a third written agreement with Counterclaim Defendants (hereinafter "Project III").

26.     Counterclaim Defendants represented to Counterclaim Plaintiff that Dr. Cadman was the project leader for Project III.

27.     Under Project III, Counterclaim Plaintiff and Counterclaim Defendants agreed to conduct joint development research on two pharmaceutical drugs called Avastin and Rituxan, which were developed by a company called Genentech.

28.     Under Project III, Counterclaim Defendants invited Counterclaim Plaintiff to invest Five Hundred Thousand Dollars ($500,000.00 U.S.D.) with Counterclaim Defendants, towards the project, Counterclaim Defendants agreed to contribute Seven Hundred Fifty Thousand Dollars ($750,000.00 U.S.D.) towards the project, and Counterclaim Defendants represented to Counterclaim Plaintiff that Genentech agreed to match these combined funds by investing One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00 U.S.D.) towards Project III.

29.     Genentech was not a party to the written agreement between Counterclaim Plaintiff and Counterclaim Defendants for Project III.

30.     Despite demand, Counterclaim Defendants failed to provide Counterclaim Plaintiff with a written agreement signed by Genentech or any other evidence that shows Genentech's agreement to invest in Project III in accordance with Counterclaim Defendants' representations to Counterclaim Plaintiff.

31.     Counterclaim Defendants represented to Counterclaim Plaintiff on numerous occasions that Genentech would match the funds contributed by Counterclaim Plaintiff and Counterclaim Defendants.

32.     On or about July 28, 2005, Counterclaim Plaintiff transferred Five Hundred Thousand Dollars ($500,000.00 U.S.D.) to Counterclaim

Defendants' accounts in accordance with Counterclaim Plaintiff's obligations under Project III.

33.     Counterclaim Defendants have never invested any funds towards Project III.

34.     Upon information and belief, Genentech has never invested any funds towards Project III.

35.     In or about February 2006, Counterclaim Defendants proposed a merger between Counterclaim Defendant Eurus Genomics, Inc. and Counterclaim Plaintiff.

36.     Formal merger negotiations continued until August 2006 when the negotiations were suspended indefinitely by Counterclaim Defendants.

37.     In or about September 2006, Counterclaim Defendants recommended to Counterclaim Plaintiff that another research entity assume Counterclaim Defendants' obligations under Projects I and II.

38.     However, despite demand, Counterclaim Defendants refused to refund Counterclaim Plaintiff's payments for Projects I and II, which totaled Four Hundred Thousand Dollars ($400,000.00 U.S.D.) at that time.

39.     Counterclaim Defendants later disclosed to Counterclaim Plaintiff, on September 14, 2006, that only twelve (12) of the three hundred (300)

DNA samples Counterclaim Defendants were obligated to obtain under Projects I and II had actually been collected by Counterclaim Defendants.

40.     Despite demand, Counterclaim Defendants failed to provide any samples or patient information regarding Project I, or otherwise disclose any information to show that Counterclaim Defendants performed any of their obligations under Project I.

41.     Despite demand, Counterclaim Defendants failed to provide any analysis, findings, or status regarding Project II, or otherwise disclose any information to show that Counterclaim Defendants performed any of their obligations under Project II.

42.     Despite demand, Counterclaim Defendants failed to provide Counterclaim Plaintiff with any information regarding the status of Project III, or otherwise disclose any information to show that Counterclaim Defendants performed any of their obligations under Project III.

43.     Counterclaim Plaintiff requested the status of Projects I, II, and III from Counterclaim Defendants in writing and by telephone.

44.     Despite demand, Counterclaim Defendants refused to meet with Counterclaim Plaintiff to discuss the status of Projects I, II, and III, and the appropriation or misappropriation of Counterclaim Plaintiff's funds and investment in or for the projects.

45.     On or about December 1, 2006, Counterclaim Defendants purportedly terminated Projects I, II, and III in writing.

46.     Despite demand, Counterclaim Defendants refused to refund any payment or investment made by Counterclaim Plaintiff in the projects.

47.     Counterclaim Plaintiff was forced to forgo other investment opportunities once it had invested money in Projects I, II, and III.

48.     Counterclaim Defendants' extensive delay in completing Projects I and II caused Counterclaim Plaintiff to lose future business and expected profits.

49.     Counterclaim Defendants' wrongful conduct as alleged herein was done willfully and wantonly and/or otherwise in conscious disregard to Counterclaim Plaintiff.

## COUNT I

### (BREACH OF CONTRACT – PROJECT I AND THE AMENDMENT)

50.     Counterclaim Plaintiff realleges and incorporates herein as fully set forth the allegations contained in paragraphs 1 through 49 of this Counterclaim.

51.     The signed agreement for Project I and the Amendment constitute a written binding contract between the parties.

52.     Counterclaim Plaintiff performed all of its obligations under Project I and the Amendment by, *inter alia*, making timely payments to

Counterclaim Defendants in the amounts of Two Hundred Thousand Dollars

($200,000.00 U.S.D.) and One Hundred Thousand Dollars ($100,000.00 U.S.D.).

53.    Counterclaim Defendants failed to perform all of their

obligations under Project I and the Amendment by, *inter alia*, failing to collect

sufficient DNA samples prior to Counterclaim Defendants' purported termination

of Project I and the Amendment.

54.    As a direct and proximate result of Counterclaim Defendants'

breach of contract, Counterclaim Plaintiff has been damaged in an amount to be

proven at trial.

## COUNT II

(BREACH OF CONTRACT – PROJECT II)

55.    Counterclaim Plaintiff realleges and incorporates herein as fully

set forth the allegations contained in paragraphs 1 through 54 of this Counterclaim.

56.    The signed agreement for Project II constitutes a written

binding contract between the parties.

57.    Counterclaim Plaintiff performed all of its obligations under

Project II by, *inter alia*, making timely payment to Counterclaim Defendants in the

amount of One Hundred Thousand Dollars ($100,000.00 U.S.D.).

58.    Counterclaim Defendants failed to perform any of their

obligations under Project II by, *inter alia*, failing to conduct any DNA analysis

using samples from Project I and the Affymetrix DNA chip prior to Counterclaim

Defendants' purported termination of Project II.

59.     As a direct and proximate result of Counterclaim Defendants'

breach of contract, Counterclaim Plaintiff has been damaged in an amount to be

proven at trial.

## COUNT III

(BREACH OF CONTRACT – PROJECT III)

60.     Counterclaim Plaintiff realleges and incorporates herein as fully

set forth the allegations contained in paragraphs 1 through 59 of this Counterclaim.

61.     The signed agreement for Project III constitutes a written

binding contract between the parties.

62.     Counterclaim Plaintiff performed all of its obligations under

Project III by, *inter alia*, making timely payment to Counterclaim Defendants in

the amount of Five Hundred Thousand Dollars ($500,000.00 U.S.D.).

63.     Counterclaim Defendants failed to perform all of their

obligations under Project III.

64.     Counterclaim Plaintiff demanded assurance from Counterclaim

Defendants that they intended to fulfill their obligations under Project III.

65.     However, Counterclaim Defendants failed to provide any

assurances, and instead, purportedly terminated Project III.

66.    As a direct and proximate result of Counterclaim Defendants' breach of contract, Counterclaim Plaintiff has been damaged in an amount to be proven at trial.

## COUNT IV

(INTENTIONAL AND/OR NEGLIGENT MISREPRESENTATION)

67.    Counterclaim Plaintiff realleges and incorporates herein as fully set forth the allegations contained in paragraphs 1 through 66 of this Counterclaim.

68.    Counterclaim Defendants intentionally and/or negligently misrepresented to Counterclaim Plaintiff that Counterclaim Defendants would collect samples and conduct analysis as they agreed to under Project I and II.

69.    Counterclaim Defendants intentionally and/or negligently misrepresented to Counterclaim Plaintiff that more than seventy percent (70%) of the Project I Rheumatology patient DNA samples had been collected by Counterclaim Defendants.

70.    Counterclaim Defendants intentionally and/or negligently misrepresented to Counterclaim Plaintiff that Counterclaim Defendants would conduct research analysis as they agreed to under Project II.

71.    Counterclaim Defendants intentionally and/or negligently misrepresented to Counterclaim Plaintiff that Counterclaim Defendants would conduct research analysis as they agreed to under Project III.

72.    Counterclaim Defendants intentionally and/or negligently misrepresented to Counterclaim Plaintiff that Counterclaim Defendant would contribute matching funds for Project III.

73.    Counterclaim Defendants intentionally and/or negligently misrepresented to Counterclaim Plaintiff that Genentech would contribute matching funds for Project III.

74.    As a direct and proximate result of Counterclaim Defendants' intentional and/or negligent misrepresentations, Counterclaim Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT V

### (FRAUD)

75.    Counterclaim Plaintiff realleges and incorporates herein as fully set forth the allegations contained in paragraphs 1 through 74 of this Counterclaim.

76.    Counterclaim Defendants made false representations to Counterclaim Plaintiff with knowledge of their falsity and in contemplation of Counterclaim Plaintiff's reliance upon those false representations.

77.    Counterclaim Plaintiff justifiably relied upon those representations to its determent.

78.　　As a direct and proximate result of Counterclaim Defendants' false representations, Counterclaim Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT VI

### (FRAUDULENT INDUCEMENT)

79.　　Counterclaim Plaintiff realleges and incorporates herein as fully set forth the allegations contained in paragraphs 1 through 78 of this Counterclaim.

80.　　Counterclaim Defendants made misrepresentations of material fact for the purpose of inducing Counterclaim Plaintiff to act.

81.　　Counterclaim Defendants knew these misrepresentations to be false and that Counterclaim Plaintiff reasonably believed them to be true.

82.　　Counterclaim Plaintiff relied on the misrepresentations and as a direct and proximate result of Counterclaim Defendants' false representations, Counterclaim Plaintiff has suffered damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff demands judgment against Counterclaim Defendants and respectfully prays for relief as follows:

1.　　for an Order granting rescission of Projects I, II, and III and for the reimbursement or refund by Counterclaim Defendants to Counterclaim Plaintiff in the amount of Nine Hundred Thousand Dollars ($900,000.00 U.S.D.);

2.      for special damages, including damages for lost business

opportunity, in an amount to be proven at trial;

3.      for general damages in an amount to be proven at trial;

4.      for punitive damages;

5.      for attorneys' fees and costs; and

6.      for such other and further relief as may be proper and just.

DATED: Honolulu, Hawaii, January 11, 2007.


    /s/ DUANE R. MIYASHIRO
DUANE R. MIYASHIRO
JOHN P. DOBROVICH, JR.

Attorneys for Defendant/Counterclaim
Plaintiff
GENESYS TECHNOLOGIES, INC.