ORIGINAL

DANIEL F. S. LEE  673
500 Ala Moana Boulevard
Suite 3-403
Honolulu, HI  96813
Telephone: 537-1233
Facsimile: 537-1412

Attorney for Plaintiffs/
  Counterclaim Defendants
  EURUS GENOMICS, INC. and
  DANA ICHINOTSUBO

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 30 2007

at ___ o'clock and ___ min ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EURUS GENOMICS, INC., a Delaware corporation, and DANA ICHINOTSUBO, | CIVIL NO. 06-00651 SOM-LEK |
| Plaintiffs, | ANSWER TO COUNTERCLAIM FILED JANUARY 11, 2007. |
| vs. | |
| GENESYS TECHNOLOGIES, INC., a Japan corporation, and TOSHIAKI SUZUKI, | |
| Defendants. | |
| and | |
| GENESYS TECHNOLOGIES, INC., | |
| Counterclaim Plaintiff, | |
| vs. | |
| EURUS GENOMICS, INC. and DANA ICHINOTSUBO, | |
| Counterclaim Defendants. | |

2007\0130-1.eur

(CERTIFICATE OF SERVICE ATTACHED)

ANSWER TO COUNTERCLAIM
FILED JANUARY 11, 2007

Come now Plaintiffs/Counterclaim Defendants Eurus Genomics, Inc. and Dana Ichinotsubo (collectively referred to herein as "EURUS") and hereby respond to the counterclaims alleged by Defendant Genesys Technologies, Inc. (hereinafter referred to as "GENESYS").[1]

1. EURUS agrees that this Court does have jurisdiction (both subject matter and personal) to hear this matter.

2. EURUS agrees that this is the proper venue for this matter.

3. EURUS lacks sufficient information to admit or deny the allegations of paragraph 3 of the Counterclaim and therefore denies all allegations contained therein.

4. Admitted.

5. EURUS admits that Dana Ichinotsubo is a United States citizen residing within the State of Hawaii.

6. EURUS was introduced to Toshiaki Suzuki by Dr. Hiroshi Mizushima in Japan. In or around November 2004, Mr. Suzuki traveled to Hawaii. During that trip he met with Mr. Ichinotsubo, who later introduced Dr. Edwin Cadman. On a subsequent trip to Hawaii, Suzuki was introduced to State Senator Robert Bunda. Both Cadman and Bunda attested to EURUS' credibility. EURUS lacks sufficient

---

[1] The following paragraph numbers correspond to the paragraph numbers of the Counterclaim filed in this Court on January 11, 2007.

information to admit or deny the remaining allegations of paragraph 6 of the Counterclaim and therefore denies all remaining allegations contained therein.

7. Denied.

8. EURUS admits that on or about February 15, 2005, EURUS entered into an agreement with GENESYS relating to, *inter alia*, identifying approximately three hundred (300) rheumatology patients of Japanese ancestry that were currently taking and/or had previously taken Remicade®, Enbrel®, and/or Humira® for subsequent testing. The value stated in the initial agreement was Five Hundred Thousand Dollars ($500,000 USD) to be paid in specific installments over a period of twelve (12) months, extendable for an additional twelve (12) months if required to identify sufficient numbers of patients. EURUS explained that the anticipated cost for the entire study was expected to be on the order of One Million Five Hundred Thousand Dollars ($1,500,000 USD). GENESYS indicated that it could not pay the full amount at that time, but that the agreement would be amended accordingly when GENESYS' financial situation could accommodate the full amount. EURUS denies the remaining allegations of paragraph 8 of the Counterclaim.

9. Admitted.

10. EURUS admits that the first payment of Two Hundred Thousand Dollars ($200,000 USD) was to be paid within two (2) weeks of the signing of the agreement. EURUS denies the remaining allegations of paragraph 10 of the Counterclaim.

11. Admitted.

12. GENESYS paid the first installment of Two Hundred Thousand Dollars ($200,000 USD) on or about March 1, 2005 by wire transfer. EURUS denies the remaining allegations of paragraph 12 of the Counterclaim.

13. EURUS admits that on or about June 21, 2005, the prior agreement was amended in writing at the request of EURUS. EURUS indicated to GENESYS that it desired the amendment because the time expended and the cost of collection and the Institutional Review Board ("IRB") process exceeded the initial amounts paid. Thus, GENESYS agreed to accelerate the payment schedule in accordance with the original understanding that the cost of the entire project would be on the order of One Million Five Hundred Thousand Dollars ($1,500,000 USD). GENESYS willingly agreed to amend the agreement. EURUS denies the remaining allegations of paragraph 13 of the Counterclaim.

14. Admitted.

15. Denied.

16. Denied.

17. EURUS admits that "a second payment" (which was separate and distinct from the previously agreed to "2nd Payment") of One Hundred Fifty Thousand Dollars ($150,000 USD) would be paid. One Hundred Thousand Dollars of the "second payment" was to be paid at the time of signing first amendment to the February 15, 2005 agreement, with the timing of the remainder (and the installments thereof) to be negotiated. EURUS denies the remaining allegations of paragraph 17 of the Counterclaim.

18. EURUS admits that the timing of the 2nd Payment was to remain defined as "after 70% of the patient sampling are collected" and the timing of the "3rd Payment" was to be negotiated. EURUS denies the remaining allegations of paragraph 18 of the Counterclaim.

19. Admitted.

20. EURUS admits that on or about June 15, 2005, EURUS and GENESYS entered into an agreement for a second project (hereinafter referred to as "the Affymetrix Project"). GENESYS had represented that it had created an algorithm with which GENESYS could determine the relational linkage of genetic components of individuals suffering from rheumatoid arthritis. GENESYS requested that EURUS perform analysis using DNA chips supplied by Affymetrix, Inc. (Santa Clara, CA) to test the efficacy of the identified algorithm. EURUS denies the remaining allegations of paragraph 20 of the Counterclaim.

21. EURUS admits that under the agreement for the Affymetrix Project, Eurus Genomics, Inc. would "obtain Rheumatology patient's (*sic*) DNA sample and clinical data collected from the original Agreement dated February 15, 2005." EURUS denies the remaining allegations of paragraph 21 of the Counterclaim.

22. EURUS denies having made the representations alleged in paragraph 22 of the Counterclaim. EURUS lacks sufficient information to admit or deny the remaining allegations of paragraph 22 of the Counterclaim and therefore denies all remaining allegations contained therein.

23. Denied.

24. Admitted.

25. EURUS admits that on or about July 25, 2005, EURUS submitted a draft term sheet for a proposed Agreement under which EURUS proposed the GENESYS would "start joint development research on Genentech drugs Avastin® and Tituxin®." EURUS denies the remaining allegations of paragraph 25 of the Counterclaim.

26. EURUS admits that it proposed that Dr. Edwin Cadman would function as the point person for the proposed Project III. EURUS denies the remaining allegations of paragraph 26 of the Counterclaim.

27. Denied.

28. EURUS admits that under the proposed structure for the proposed Project III, GENESYS would remit Five Hundred Thousand Dollars ($500,000 USD), EURUS would contribute a "matching fund amount not to exceed US$750,000", the amount of which contingent upon (and the specific amount would be determined thereby), Genentech entering into a corresponding agreement which was envisioned to include Genentech contributing funding in an amount of up to One Million Two Hundred Fifty Thousand Dollars ($1,250,000 USD). EURUS denies the remaining allegations of paragraph 28 of the Counterclaim.

29. Admitted.

30. EURUS admits that it did not provide to GENESYS any written agreement to which Genentech, Inc. was a party. EURUS denies the remaining allegations of paragraph 30 of the Counterclaim.

31. Denied.

32. EURUS admits that on or about July 28, 2005, GENESYS wired Five Hundred Thousand Dollars ($500,000 USD) to the account of Eurus Genomics, Inc. as an advanced payment for the proposed Project III. EURUS denies the remaining allegations of paragraph 32 of the Counterclaim.

33. Denied.

34. EURUS lacks sufficient information to admit or deny the allegations of paragraph 34 of the Counterclaim and therefore denies each allegation therein.

35. Denied.

36. Denied.

37. Admitted.

38. Denied

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. EURUS admits that at various times, GENESYS requested status updates concerning each of the two pending and one proposed project. On each such occasion, EURUS provided all available information to GENESYS in response to the aforementioned requests. EURUS denies the remaining allegations of paragraph 43 of the Counterclaim.

44. Denied.

45. EURUS admits that on or about December 1, 2006, it properly exercised its rights under the termination clauses of the aforementioned agreements. EURUS denies the remaining allegations of paragraph 45 of the Counterclaim.

46. Denied.

47. EURUS denies each allegation of paragraph 47 of the Counterclaim. On multiple occasions, Mr. Suzuki freely stated that GENESYS had no other business prospects or opportunities, other than those that were then pending with EURUS.

48. Denied.

49. Denied.

50. EURUS realleges and incorporates herein by reference, each of the prior answers provided in response to paragraphs 1 through 49 as if restated in full herein.

51. Admitted.

52. Denied.

53. Denied.

54. Denied.

55. EURUS realleges and incorporates herein by reference, each of the prior answers provided in response to paragraphs 1 through 54 as if restated in full herein.

56. Admitted.

57. Denied.

58. Denied.

59. Denied.

60. EURUS realleges and incorporates herein by reference, each of the prior answers provided in response to paragraphs 1 through 59 as if restated in full herein.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. EURUS realleges and incorporates herein by reference, each of the prior answers provided in response to paragraphs 1 through 66 as if restated in full herein.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. EURUS realleges and incorporates herein by reference, each of the prior answers provided in response to paragraphs 1 through 74 as if restated in full herein.

76. Denied.

77. Denied.

78. Denied.

79. EURUS realleges and incorporates herein by reference, each of the prior answers provided in response to paragraphs 1 through 78 as if restated in full herein.

80. Denied.

81. Denied.

82. Denied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs/Counterclaim Defendants Eurus Genomics, Inc. and Dana Ichinotsubo (collectively referred to herein as "EURUS") hereby request that:

1. Each of GENESYS' counterclaims be dismissed in their entirety with prejudice and without GENESYS taking any recovery;

2. EURUS be awarded its attorney fees;

3. EURUS be awarded its costs;

4. Any additional relief that the Court determines EURUS is entitled to as compensatory and/or punitive damages for the harm caused by

GENESYS.

DATED:  Honolulu, Hawaii, January 30, 2007.

_____
DANIEL F. S. LEE

Attorney for Plaintiffs/
   Counterclaim Defendants
   EURUS GENOMICS, INC. and
   DANA ICHINOTSUBO

...

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing in the above-entitled matter by mail, postage prepaid, at the United States Post Office in Honolulu, Hawaii, on this 30th day of January, 2007 on:

> DUANE R. MIYASHIRO, ESQ.
> JOHN P. DOBROVICH, JR., ESQ.
> Carlsmith Ball LLP
> ASB Tower, Suite 2200
> 1001 Bishop Street
> Honolulu, HI  96813

DATED:  Honolulu, Hawaii, January 30, 2007.

_____
DANIEL F. S. LEE

Attorney for Plaintiffs/
  Counterclaim Defendants
  EURUS GENOMICS, INC. and
  DANA ICHINOTSUBO