

ORIGINAL

DANIEL F. S. LEE  673
500 Ala Moana Boulevard
Suite 3-403
Honolulu, HI  96813
Telephone:  (808) 537-1233
Facsimile:  (808) 537-1412

Richard J. Oparil
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 0 9 2007

at ___ o'clock and ___ min ___ M
SUE BEITIA, CLERK

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EURUS GENOMICS, INC., a Delaware corporation, and DANA ICHINOTSUBO, <br><br>Plaintiffs, <br><br>vs. <br><br>GENESYS TECHNOLOGIES, INC., a Japan corporation, and TOSHIAKI SUZUKI, <br><br>Defendants. | CIVIL NO. CV06-00651 SOM-LEK <br><br>**AMENDED COMPLAINT;**<br>**SUMMONS.** |

### AMENDED COMPLAINT

Plaintiffs, Eurus Genomics, Inc. and Dana Ichinotsubo, bring this amended complaint against defendants, Genesys Technologies, Inc. and Toshiaki Suzuki, and allege as follows:

(Certificate of Service Attached)



## Parties

1. Plaintiff Eurus Genomics, Inc. ("Eurus") is a corporation organized under the laws of the State of Delaware and having a principal place of business located at 500 Ala Moana Boulevard, Suite 3-405, Honolulu, Hawaii 96813.

2. Plaintiff Dana Ichinotsubo ("Ichinotsubo") is an individual with an address at 500 Ala Moana Boulevard, Suite 3-405, Honolulu, Hawaii 96813. Ichinotsubo was and is an officer and director of Eurus.

3. Defendant Genesys Technologies, Inc. ("Genesys") is a corporation organized under the laws of Japan and having a principal place of business located at Fujisawa-Komezen Bldg 4F, 1-1-17 Kugenuma-Shigami, Fujisawa-shi, Kanagawa 251-0025 Japan.

4. Defendant Toshiaki Suzuki ("Suzuki") is a Japanese citizen residing in Fujisawa, Japan and having a principal place of business located at Fujisawa-Komezen Bldg 4F, 1-1-17 Kugenuma-Shigami, Fujisawa-shi, Kanagawa 251-0025 Japan. Suzuki was and is an officer, director and agent of Genesys.

5. Genesys and Suzuki (collectively, "defendants") have joint and severable liability for the causes of action set forth herein unless otherwise noted.

## Jurisdiction and Venue

6. Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1332(a) and (c). Diversity of citizenship is complete, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(d), 28 U.S.C.§ 1400(b) and the applicable law of this Court. Venue and jurisdiction for this action are proper in this Court given that the defendants are alien corporations.

8. Defendants have voluntarily subjected themselves to the jurisdiction of this Court through their actions which include, *inter alia*, entering into one or more contracts with plaintiffs, said contracts specifically requiring actions to be taken and completed in Hawaii and repeated communications made to Hawaii.

### Facts

9. Eurus' business is aimed at creating new medical discoveries through the integration of pharmacogenomics (*i.e.*, how a person's genetic makeup affects the body's response to a drug) and clinical trials and research, which will lead to new drug development and marketing. Eurus also works to assist emerging biotechnology efforts and aid in new drug discoveries to be brought to market in the most expeditious manner.

10. On or about February 15, 2005, plaintiffs and defendants entered into a contract captioned "Eurus Genomics Inc., and Genesys Technologies, Inc. Agreement." ("February 2005 Agreement"). Pursuant to this agreement, defendants agreed to provide plaintiffs with research funds and, in turn, plaintiffs would use their best efforts to conduct research and obtain samples for rheumatology patients. The term of the contract was February 15, 2005 to December 31, 2005, renewable for another 12 months until December 31, 2006.

11. Following the execution of the February 2005 Agreement, plaintiffs undertook best efforts in accordance with said contract. To date, plaintiffs have made best efforts to honor all requirements and obligations of said contract.

12. On or about July 26, 2005, plaintiffs and defendants entered into a contract captioned "Research Agreement between Eurus Genomics Inc., and Genesys Technologies, Inc." ("July 2005 Agreement"). Pursuant to this contract, defendants agreed to provide plaintiffs with research funds and, in turn, plaintiffs would use their best efforts to conduct research in breast

cancer and rheumatology.  The term of the contract was July 25, 2005 to July 25, 2006, but the term could be modified by circumstances, such as lack of patient sampling.

13.     Following the execution of the July 2005 Agreement, plaintiffs undertook best efforts in accordance with said contract.  To date, plaintiffs have made best efforts to honor all requirements and obligations of said contract.

14.     Subsequently, defendants conveyed that plaintiffs did not comply with the Agreements and indicated that the Agreements were cancelled and the settlement of disputes would be handled by their attorneys.

15.     Plaintiffs acknowledged the said Agreements were cancelled and they made numerous requests to the defendants to provide the name of defendants' attorney.

16.     On or about November 1, 2006, defendants began harassing and intentionally interfering with the business of plaintiffs.  Defendants repeatedly and unnecessarily made telephone calls (in excess of 20 per day) and sent harassing emails.  Defendants' actions were directed to plaintiffs, their associates, partners and contractual relations.

17.     On or about November 15, 2006, Suzuki informed Makoto Koshihara, the Chairman of Eurus Genomics, K.K. (the parent company of Eurus), that he would be traveling to Hawaii to meet with Dr. Edwin Cadman, Dr. David Curb and plaintiffs.  Although Suzuki was informed that such meetings could not occur due to previously scheduled business, business-related travel and certain personal health conditions of the named individuals, Suzuki maintained his stated intention of traveling to Hawaii for said unilaterally noticed meetings.

18.     Suzuki further stated to Koshihara that Koshihara was responsible to defendants and threatened to sue Koshihara in Japan if defendants were not paid money.

19. In addition, during the conversation, Suzuki told Koshihara that Ichinotsubo and Eurus engaged in dirty tricks, cheated Genesys and made false statements in connection with the February and July 2005 Agreements. Defendants' statement is untrue and defamatory.

20. Between the dates of November 15 and 25, 2006, Ichinotsubo repeatedly contacted Suzuki, emphatically requesting that defendants not interfere with plaintiffs' prior scheduled business, including meetings and business with Eurus' contractual partners, and plaintiffs' business in general and to cancel any intended travel to Hawaii. Ichinotsubo informed Suzuki that due to scheduled business and the health concerns of certain related individuals, his failure to cancel the threatened travel to Hawaii in order to avoid harm to plaintiffs' business and contractual relations with others. Suzuki refused to agree and maintained his stated intent to travel to Hawaii and meet with plaintiffs regardless of their prior engagements and/or inconvenience.

21. In order to minimize the harm to plaintiffs' business interests, Ichinotsubo cancelled long standing travel plans to California. This scheduled trip included meetings critical to plaintiffs' business interests.

22. On or about November 27, 2006, Eurus wrote to defendants agreeing that the two Agreements were terminated and that any further discussion would be handled through their respective attorneys. Eurus' letter also requested that Suzuki's harassment stop.

23. Despite Eurus' letter, on or about November 30, 2006, Suzuki again contacted Eurus Genomics, K.K. directly, informing them that he once again demanded plaintiffs' attendance at meetings defendants had unilaterally scheduled for the week of December 4, 2006. Despite repeated requests to cancel his intended travel to Hawaii, and

having been informed of the harm to plaintiffs' business that would be caused by Suzuki's intentional interference with plaintiffs' business, Suzuki refused to confirm that he would not proceed with the intentional interference.

24. On or about December 1, 2006, Eurus again wrote to defendants regarding Suzuki's continued improper and oppressive harassment and noted lost business opportunities. The letter reiterated Eurus' agreement that the two Agreements were terminated and that any further discussion would be handled by their attorneys.

25. Despite his oppressive and harassing insistence on traveling to Hawaii to directly meet with Eurus, however, Suzuki did not actually meet with Eurus.

## COUNT I
### (Tortious Interference With Prospective Economic Advantage)

26. The foregoing allegations of this complaint are incorporated by reference.

27. At all relevant times, plaintiffs had one or more valid business relationships or prospective advantages or expectancies (such that there was a reasonable probability of it maturing into a future economic benefit to the plaintiffs).

28. Defendants had full knowledge and notice that their intended and threatened actions would interfere with plaintiffs' business relationships or prospective advantages or expectancies and cause direct and proximate harm to plaintiffs. Despite such notice, defendants intentionally acted in a manner which it knew, or should have known, would cause direct or proximate harm to plaintiffs. Even after being informed of the harm that had been caused by the first threatened interference, defendants refused to cease and desist from further interference.

29. Defendants intended to interfere with the plaintiffs' business relationships, advantages, or expectancies.

30. Defendants' intentional acts have caused direct and proximate harm to plaintiffs' business and financial interests.

31. Plaintiffs have been damaged in an amount to be determined at trial but in excess of $75,000.

## COUNT II
### (Breach of Duty of Good Faith and Fair Dealing – Genesys)

32. The foregoing allegations of this complaint are incorporated by reference.

33. Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement.

34. Genesys had not been faithful to an agreed common purpose and acted consistently with the justified expectations of Eurus in connection with the February and July 2005 Agreements and the termination thereof by Genesys.

35. Genesys acted to deprive Eurus of the benefits of the contracts and failed to perform or enforce the contracts in good faith.

36. As a direct and proximate result of defendants' breach of the duty of good faith and fair dealing, Eurus has been damaged, in an amount to be determined at trial but in excess of $75,000.

## COUNT III
### (Slander *Per Se*)

37. The foregoing allegations of this complaint are incorporated by reference.

38. Defendants disseminated to one or more third parties, false and defamatory statements regarding Ichinotsubo, including without limitation, the statement made by Suzuki (as an agent of Genesys) on or about November 15, 2006 to Koshihara that

Ichinotsubo and Eurus engaged in dirty tricks, cheated Genesys and made false statements in connection with the February and July 2005 Agreements. That statement is untrue.

39. Suzuki made the statement knowing it to be untrue or with reckless or negligent disregard for the truth.

40. Such statement constitutes slander *per se* because it (1) imputes to Ichinotsubo the commission of a crime (*i.e.*, fraud), and/or (2) has a tendency to injure him in his office, profession, calling or trade. As a result, damage or injury to Ichinotsubo is presumed.

41. Ichinotsubo seeks damages in an amount to be determined at trial but in excess of $10,000,000.

WHEREFORE, plaintiffs respectfully request that the Court:

(a) enter an Order that defendants have collectively and individually intentionally interfered with plaintiffs' business;

(b) enter an Order that defendants have collectively and individually intentionally interfered with plaintiffs' contractual relations with others;

(c) enjoin defendants from further interference with plaintiffs' business and contractual relations with others;

(d) award plaintiffs damages in an amount of $10,000,000.00;

(e) award punitive damages;

(f) award plaintiffs' attorneys' fees and expenses;

(g) award plaintiffs' costs; and

(h) grant any and all other legal and equitable relief that this Court deems just and appropriate.

DATED: Honolulu, Hawaii, March 9, 2007.

_____
DANIEL F. S. LEE
RICHARD J. OPARIL

Attorneys for Plaintiffs

2007\0308-3.eur