DANIEL F. S. LEE  673
500 Ala Moana Boulevard
Suite 3-403
Honolulu, HI  96813
Telephone:  (808) 537-1233

Richard J. Oparil
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000

Attorney for Plaintiffs

| | |
|---|---|
| EURUS GENOMICS, INC., DANA ICHINOTSUBO, and ANTARA BIOSCIENCES, INC.<br><br>        Plaintiffs,<br><br>   vs.<br><br>GENESYS TECHNOLOGIES, INC., and TOSHIAKI SUZUKI,<br><br>        Defendants.<br><br>―――――――――――――――――<br><br>GENESYS TECHNOLOGIES, INC.,<br><br>   Counterclaim Plaintiff,<br><br>   vs.<br><br>EURUS GENOMICS, INC. and DANA ICHINOTSUBO,<br><br>        Counterclaim Defendants. | CIVIL NO.  06-00651 SOM-LEK<br><br>**SECOND AMENDED COMPLAINT**<br><br>TRIAL DATE: MARCH 4, 2008 |

Plaintiffs, Eurus Genomics, Inc., Dana Ichinotsubo, and Antara Biosciences, Inc., bring this second amended complaint against defendants, Genesys Technologies, Inc. and Toshiaki Suzuki, and allege as follows:

**[ CERTIFICATE OF SERVICE ATTACHED]**

## PARTIES

1.  Plaintiff Eurus Genomics, Inc. ("Eurus") is a corporation organized under the laws of the State of Delaware and having a principal place of business located at 500 Ala Moana Boulevard, Honolulu, Hawaii.

2.  Plaintiff Dana Ichinotsubo ("Ichinotsubo") is an individual with an address at 500 Ala Moana Boulevard, Honolulu, Hawaii. Ichinotsubo was and is an officer and director of Eurus.

3.  Plaintiff Antara Biosciences, Inc. ("Antara") is a corporation organized and existing under the laws of the State of Delaware and having a principal place of business located at Mountain View, California.

4.  Defendant Genesys Technologies, Inc. ("Genesys") is a corporation organized under the laws of Japan and having a principal place of business located at Fujisawa-Komezen Bldg 4F, 1-1-17 Kugenuma-Shigami, Fujisawa-shi, Kanagawa 251-0025 Japan.

5.  Defendant Toshiaki Suzuki ("Suzuki") is a Japanese citizen residing in Fujisawa, Japan and having a principal place of business located at Fujisawa-Komezen Bldg 4F, 1-1-17 Kugenuma-Shigami, Fujisawa-shi, Kanagawa 251-0025 Japan. Suzuki was and is an officer, director and agent of Genesys.

6.  Genesys and Suzuki (collectively, "defendants") have joint and severable liability for the causes of action set forth herein unless otherwise noted.

## JURISDICTION AND VENUE

7.  Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1332(a) and (c). Diversity of citizenship is complete, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this forum pursuant to 28 U.S.C. § 1391(d), 28 U.S.C.§ 1400(b) and the applicable law of this Court. Venue and jurisdiction for this action are proper in this Court given that the defendants are alien corporations.

9. Defendants have voluntarily subjected themselves to the jurisdiction of this Court through their actions which include, *inter alia,* entering into one or more contracts with Eurus, said contracts specifically requiring actions to be taken and completed in Hawaii and repeated communications made to Hawaii.

**FACTS**

10. Eurus' business is aimed at creating new medical discoveries through the integration of pharmacogenomics (*i.e.*, how a person's genetic makeup affects the body's response to a drug) and clinical trials and research, which will lead to new drug development and marketing. Eurus also works to assist emerging biotechnology efforts and aid in new drug discoveries to be brought to market in the most expeditious manner.

**Eurus/Genesys Agreements**

11. Eurus first met with Genesys and Suzuki in or around November 2004. At that time, Eurus and Ichinotsubo were informed by Suzuki that Genesys was already involved in a rheumatoid arthritis ("RA") project and had established relationships with, among others, Dr. Naoyuki Kamatani of the Tokyo Women's Medical University in Japan. Suzuki represented that there was a large amount of available RA patient data in Hawaii, primarily through Dr. Ken Arakawa. Suzuki represented that collection and analysis of that data would be valuable. Suzuki explained that Genesys could not manage the relationship directly because they were not located or had support in Hawaii. In contrast, the data would be available to Eurus and could form the basis of a profitable partnership between Eurus and Genesys. Suzuki assured Eurus that the patient data would be available if Eurus would agree to participate.

12. On or about February 15, 2005, Eurus and defendants entered into a contract captioned "Eurus Genomics Inc., and Genesys Technologies, Inc. Agreement." ("February 2005 Agreement"). Pursuant to this agreement, defendants agreed to provide Eurus with research funds and, in turn, Eurus would use its best efforts to conduct research and obtain samples for rheumatology patients. The term of the contract was February 15, 2005 to December 31, 2005, renewable for another 12 months until December 31, 2006.

13. Following the execution of the February 2005 Agreement, Eurus undertook best efforts in accordance with said contract. To date, Eurus have made best efforts to honor all requirements and obligations of said contract.

14. Eurus invested significant financial and other resources in connection with the proposed business venture with Genesys. However, Eurus encountered several impediments to collecting the data Suzuki had represented was available. Contrary to Suzuki's representations, the samples were not readily available. Suzuki had misrepresented the availability of the samples and he was aware that Tanabe Seiyaku Co., Ltd. had already failed in its efforts to establish a relationship with Dr. Arakawa and gain access to the samples/data. Suzuki failed to advise Eurus of the adverse situation that existed prior to Eurus entering into the contracts with Genesys.

15. Eurus could not gain access to any of Arakawa's samples. Eurus was surprised to learn from Arakawa that he had already had a bad experience with Tanabe and had refused to work with or for Tanabe unless Eurus was willing to pay $10,000 per sample. This was not a financially viable option.

16. Genesys was fully informed as to the number of samples obtained from the outset of the project. Eurus advised Genesys that Arakawa refused to cooperate. Eurus was necessarily

concerned – not because it was worried that it could not provide the number of samples it had promised, but because Eurus had embarked upon a course of action, had made business plans and investments of its own in order to support the business, on Suzuki's assurances that the 300 samples were available to Eurus.

17. Despite those impediments, Eurus was successful in reviewing approximately 150 charts for adverse reactions in addition to collecting samples. Genesys' representatives visited Eurus' Honolulu facilities and reviewed the collected sample data. The Genesys representatives confirmed that the Hawaiian-derived data was entirely consistent with the data obtained in Japan. Throughout their relationship with Eurus, defendants were fully cognizant of the number of samples Eurus had successfully collected and had confirmed that the quality of the data collected was beyond reproach.

18. On or about July 26, 2005, Eurus and defendants entered into a contract captioned "Research Agreement between Eurus Genomics Inc., and Genesys Technologies, Inc." ("July 2005 Agreement"). Pursuant to this contract, defendants agreed to provide Eurus with research funds and, in turn, Eurus would use its best efforts to conduct research in breast cancer and rheumatology. The term of the contract was July 25, 2005 to July 25, 2006, but the term could be modified by circumstances, such as lack of patient sampling.

19. Following the execution of the July 2005 Agreement, Eurus undertook best efforts in accordance with said contract. To date, Eurus have made best efforts to honor all requirements and obligations of said contract.

20. Subsequently, defendants conveyed that Eurus did not comply with the Agreements and indicated that the Agreements were cancelled and the settlement of disputes would be handled by their attorneys.

21. Eurus acknowledged the Agreements were cancelled and they made numerous requests to the defendants to provide the name of defendants' attorney.

22. On or about November 1, 2006, defendants began harassing and intentionally interfering with the business of Eurus and Ichinotsubo. Defendants repeatedly and unnecessarily made telephone calls (in excess of 20 per day) and sent harassing emails. Defendants' actions were directed to Eurus and Ichinotsubo, their associates, partners and contractual relations.

23. On or about November 15, 2006, Suzuki informed Makoto Koshihara, the Chairman of Eurus Genomics, K.K. (the parent company of Eurus), that he would be traveling to Hawaii to meet with Dr. Edwin Cadman, Dr. David Curb and Eurus and Ichinotsubo. Although Suzuki was informed that such meetings could not occur due to previously scheduled business, business-related travel and certain personal health conditions of the named individuals, Suzuki maintained his stated intention of traveling to Hawaii for said unilaterally noticed meetings.

24. Suzuki further stated to Koshihara that Koshihara was responsible to defendants and threatened to sue Koshihara in Japan if defendants were not paid money.

25. In addition, during the conversation, Suzuki told Koshihara that Ichinotsubo and Eurus engaged in dirty tricks, cheated Genesys and made false statements in connection with the February and July 2005 Agreements. Defendants' statement is untrue and defamatory.

26. Between November 15 and 25, 2006, Ichinotsubo repeatedly contacted Suzuki, emphatically requesting that defendants not interfere with Eurus and Ichinotsubo's prior scheduled business, including meetings and business with Eurus' contractual partners, and Eurus and Ichinotsubo's business in general and to cancel any intended travel to Hawaii. Ichinotsubo informed Suzuki that due to scheduled business and the health concerns of certain related individuals, his failure to cancel the threatened travel to Hawaii in order to avoid harm to Eurus

and Ichinotsubo's business and contractual relations with others. Suzuki refused to agree and maintained his stated intent to travel to Hawaii and meet with Eurus and Ichinotsubo regardless of their prior engagements and/or inconvenience.

27. In order to minimize the harm to Eurus and Ichinotsubo's business interests, Ichinotsubo cancelled long standing travel plans to California. This scheduled trip included meetings critical to Eurus and Ichinotsubo's business interests.

28. On or about November 27, 2006, Eurus wrote to defendants agreeing that the two Agreements were terminated and that any further discussion would be handled through their respective attorneys. Eurus' letter also requested that Suzuki's harassment stop.

29. Despite Eurus' letter, on or about November 30, 2006, Suzuki again contacted Eurus Genomics, K.K. directly, informing them that he once again demanded Eurus and Ichinotsubo's attendance at meetings defendants had unilaterally scheduled for the week of December 4, 2006. Despite repeated requests to cancel his intended travel to Hawaii, and having been informed of the harm to Eurus and Ichinotsubo's business that would be caused by Suzuki's intentional interference with Eurus and Ichinotsubo's business, Suzuki refused to confirm that he would not proceed with the intentional interference.

30. On or about December 1, 2006, Eurus again wrote to defendants regarding Suzuki's continued improper and oppressive harassment and noted lost business opportunities. The letter reiterated Eurus' agreement that the two Agreements were terminated and that any further discussion would be handled by their attorneys.

31. Despite his oppressive and harassing insistence on traveling to Hawaii to directly meet with Eurus, however, Suzuki did not actually meet with Eurus.

## Antara

32. In or around April 2005, Suzuki suggested that, in light of the difficulties that had been encountered in collecting the RA samples, the parties could modify their then-existent business plan to both parties' benefit. Suzuki suggested that Eurus approach Toshiba Corporation concerning certain DNA detection technology of which Suzuki was aware. Suzuki represented that the Toshiba technology could be valuable in continuing the RA project and would enable Eurus and Genesys to recover their investments and yield a profitable business.

33. At Suzuki's urging, Eurus invited the Toshiba representatives to Hawaii so that Suzuki could present the proposed business opportunity. Suzuki presented a plan wherein, since Toshiba was already involved in the RA project, Eurus might be able to further advance the development of the Toshiba technology. Suzuki quickly turned the discussion from the RA project to one where Eurus would direct its efforts to develop a business to promote Toshiba's technology in the United States.

34. Eurus, at its own expense, proceeded to establish what would become a new and separate new corporate entity – Antara.

35. The evaluation of the Toshiba technology and the negotiations that ensued, spanned the period of approximately October 2005 through March 2006. From the outset, Suzuki represented, first to Eurus, and then Antara, that he would be responsible for identifying Japanese investors and would interface and manage the investor relationships.

36. After Eurus agreed to move forward with the establishment of Antara (to be based upon the Toshiba-licensed technology), Suzuki demanded a "commission" for any funds he raised from Antara investors in Japan. In addition, he demanded that Genesys be issued shares of Antara once formed.

37. Suzuki received a "commission" from Eurus in an amount of approximately JP¥12,600,000 (currently about $103,000), of which JP¥12,000,000 (currently about $98,000) was wired into his account and the remaining amount was paid in cash during a trip to Hawaii on or about March 28, 2006. In addition, Eurus and Antara agreed to issue 50,000 shares of Antara stock to Genesys. Collectively, the "commission" and the equity in Antara was provided by Eurus/Antara, for services received and to be performed by Suzuki/Genesys.

38. Plaintiffs also devoted considerable time, funds and resources to raising the capital required to establish and carry out Antara's business plans. They also devoted considerable time, funds and resources to leasing space for Antara, hiring the necessary personnel and acquiring the equipment and resources required for Antara's business.

39. Suzuki proceeded to raise capital from Japanese investors. However, over Eurus and Antara's objections, Suzuki provided the investors with a subscription agreement that was extremely one-sided in favor of the investors. Suzuki represented that the agreement was a "standard Japanese investment agreement." Suzuki failed to inform Eurus and/or Antara that the favorable agreement was being used to provide benefits to personal contacts and existing Genesys investors. On information and belief, Suzuki did so to quell the Genesys investors' growing displeasure with Suzuki's management of Genesys and their failed or failing investment in Genesys.

40. Suzuki's efforts were self-serving. Despite the agreement to provide Antara equity to Genesys, which Antara provided, Suzuki insisted on the shares being reissued, with 21,000 shares issued to Suzuki personally, 9,000 shares to other individuals at Genesys and the remaining 20,000 shares being issued in Genesys' name.

41. Moreover, despite receiving the "commission," Suzuki failed to perform the agreed upon investor relations role. Indeed, of the funds that Suzuki "brought" to Antara, JP¥190,000,000 (currently about $1.5 million) was raised through Hiroshi Ohno ("Ohno") whose group included himself and other "investors" (collectively the "Ohno investment group"). Included in the Ohno investment group was a second "investment group" headed by Izumi Ohkubo ("Ohkubo") of Forum Engineering. The total investment collectively raised by the Ohno investment group amounted to JP¥670,000,000 (currently about $5.5 million). Ohno also received a "commission" from Eurus.

42. Within several months of their investment, Ohno and Ohkubo demanded that Eurus repurchase their shares of Antara stock. While Eurus and Antara were surprised by the demand – particularly in light of the fact that the demand was made only months after the investment had been made – Suzuki stated that Ohno had instituted such a scheme with other companies where Ohno would demand repurchase after he had collected his commission. Suzuki failed to disclose to Antara and Eurus his knowledge of Ohno's scheme until well after the shares to Ohno and Okubo had been issued and Ohno had collected his commission.

43. Ohno has been and continues to be a major investor in Genesys.

44. Suzuki instituted a fraudulent scheme, whereby he collected a commission, received a substantial equity position in Antara (5% of the founders shares), and facilitated, aided and abetted Ohno's fraudulent scheme.

45. Suzuki conspired with Ohno to extort money (in the form of the commissions) and equity in Antara.

46. On or about December 26, 2006, Ohno and Ohkubo filed suit against Eurus in the Tokyo District Court, seeking to have Eurus repurchase their shares in Antara. On or about April

13, 2007, the Tokyo District Court entered a motion that Eurus repurchase the Antara shares and return to Ohno and Ohkubo an amount of JP¥290,000,000 and the residual JP¥380,000,000 be set aside for the remaining investors in the Ohno investment group.

47. Eurus and Antara have been harmed by Suzuki's acts, omissions and fraudulent conduct.

48. Eurus and Antara have been harmed by Genesys' acts, omissions and fraudulent conduct.

## COUNT I
### (Tortious Interference With Prospective Economic Advantage)

49. The foregoing allegations of this complaint are incorporated by reference.

50. At all relevant times, Eurus and Ichinotsubo had one or more valid business relationships or prospective advantages or expectancies (such that there was a reasonable probability of it maturing into a future economic benefit to Eurus and Ichinotsubo).

51. Defendants had full knowledge and notice that their intended and threatened actions would interfere with Eurus and Ichinotsubo's business relationships or prospective advantages or expectancies and cause direct and proximate harm to Eurus and Ichinotsubo. Despite such notice, defendants intentionally acted in a manner which it knew, or should have known, would cause direct or proximate harm to Eurus and Ichinotsubo. Even after being informed of the harm that had been caused by the first threatened interference, defendants refused to cease and desist from further interference.

52. Defendants intended to interfere with Eurus and Ichinotsubo's business relationships, advantages, or expectancies.

53. Defendants' intentional acts have caused direct and proximate harm to Eurus and Ichinotsubo's business and financial interests.

54. Eurus and Ichinotsubo have been damaged in an amount to be determined at trial but in excess of $75,000.

## COUNT II
### (Breach of Duty of Good Faith and Fair Dealing)

55. The foregoing allegations of this complaint are incorporated by reference.

56. Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement.

57. Genesys had not been faithful to an agreed common purpose and acted inconsistently with the justified expectations of Eurus in connection with the February and July 2005 Agreements and the termination thereof by Genesys.

58. Genesys acted to deprive Eurus of the benefits of the contracts and failed to perform or enforce the contracts in good faith.

59. As a direct and proximate result of defendants' breach of the duty of good faith and fair dealing, Eurus has been damaged, in an amount to be determined at trial but in excess of $75,000.

## COUNT III
### (Slander *Per Se*)

60. The foregoing allegations of this complaint are incorporated by reference.

61. Defendants disseminated to one or more third parties false and defamatory statements regarding Ichinotsubo, including without limitation, the false statement made by Suzuki (as an officer, employee or agent of Genesys) on or about November 15, 2006 to Koshihara that Ichinotsubo and Eurus engaged in dirty tricks, cheated Genesys and made false statements in connection with the February and July 2005 Agreements.

62. Suzuki made the statement knowing it to be untrue or with reckless or negligent disregard for the truth.

63. Such statement constitutes slander *per se* because it (1) imputes to Ichinotsubo the commission of a crime (*i.e.*, fraud), and/or (2) has a tendency to injure him in his office, profession, calling or trade. As a result, damage or injury to Ichinotsubo is presumed.

64. Ichinotsubo seeks damages in an amount to be determined at trial but in excess of $10,000,000.

## COUNT IV
### (Breach of Contract)

65. The foregoing allegations of this complaint are incorporated by reference.

66. Based on an oral agreement and/or course of dealings, Genesys and Suzuki entered into a contract and understanding with Antara and Eurus.

67. Genesys and Suzuki agreed that in return for performing past and future services for Antara and/or Eurus, they would receive stock in Antara.

68. Antara and Eurus fully complied with such agreement by issuing stock to Suzuki and certain other persons connected with Genesys, as directed by Suzuki.

69. Defendants materially breached the agreement by failing to perform further services for Eurus and/or Antara.

70. As a direct and proximate result of defendants' breach, Antara and Eurus have been injured, and the 50,000 shares should be deemed cancelled or voided or, in the alternative, defendants should pay compensatory damages in an amount to be determined at trial in excess of $75,000.

## COUNT V
### (Unjust Enrichment/Quantum Meruit)

71. The foregoing allegations of this complaint are incorporated by reference.

72. Suzuki induced Eurus to agree to pay him a commission for obtaining Japanese investors in Antara, specifically groups represented by Ohno and Okubo.

73. Eurus paid Suzuki approximately $103,000 as a commission for obtaining those investment funds and Suzuki has retained the benefit of that payment.

74. However, receipt of such a commission is contrary to Japanese law. In addition, shortly after making the investment, the Ohno and Okubo groups demanded that Eurus and/or Antara repurchase their shares. On or about December 26, 2006, Ohno and Okubo filed an action in a Japanese court to require Eurus to repurchase their shares in Antara.

75. Suzuki would be unjustly enriched at Eurus' expense if he was permitted to retain the benefits of the approximately $103,000 commission without repayment. To prevent this unjust enrichment, Eurus is entitled to a judgment of no less than $103,000 plus pre-judgment interest.

## COUNT VI
### (Declaratory Judgment)

76. The foregoing allegations of this complaint are incorporated by reference.

77. Suzuki induced Eurus to pay him a commission for obtaining Japanese investors in Antara, specifically groups represented by Ohno and Okubo.

78. Eurus paid Suzuki a commission totaling approximately $103,000.

79. Payment of such a commission is contrary to Japanese law.

80. As a result, the Court should declare that the commission paid to Suzuki was illegal and that amount should be repaid to Eurus.

## COUNT VII
### (<u>Fraud</u>)

81. The foregoing allegations of this complaint are incorporated by reference.

82. Defendants defrauded Eurus by wrongfully, and with the intent that Eurus rely thereon, making representations of material fact, which were untrue, but which Eurus believed to have been true, and by concealing facts which defendants should have but did not disclose to Eurus.

83. Defendants knowingly and/or intentionally or recklessly, in disregard of facts known to them, made false statements to Eurus and/or omissions causing Eurus to enter into one or more agreements with Genesys.

84. Defendants intended that Eurus rely on, and Eurus justifiably did rely on, the aforesaid misrepresentations and concealments of defendants, to Eurus' detriment.

85. As a direct and proximate result of such misrepresentations and concealments, Eurus has suffered and will suffer damages, in an amount to be determined at trial, in excess of $75,000.

## COUNT VIII
### (<u>Fraud/Indemnification/Contribution</u>)

86. The foregoing allegations of this complaint are incorporated by reference.

87. Defendants defrauded Eurus and Antara by wrongfully, and with the intent that Eurus and Antara rely thereon, making representations of material fact, which were untrue, but which plaintiffs believed to have been true, and by concealing facts which defendants should have but did not disclose to Eurus and Antara.

88. Defendants knowingly and/or intentionally or recklessly, in disregard of facts known to them, made false statements to Eurus and Antara and/or omissions causing Eurus and

Antara to pay commissions and to issue 50,000 shares of Antara stock to defendants and Genesys-related persons.

89. Defendants intended that Eurus and Antara rely on, and Eurus and Antara justifiably did rely on, the aforesaid misrepresentations and concealments of defendants, to Eurus and Antara's detriment.

90. As a direct and proximate result of such misrepresentations and concealments, Eurus and Antara have suffered and will suffer damages, in an amount to be determined at trial, in excess of $75,000, as well as indemnification and/or contribution for any amounts that Eurus and/or Antara are or may be required to pay to Ohno or Ohkubo.

WHEREFORE, plaintiffs respectfully request that the Court:

(a) enter an Order that defendants have collectively and individually intentionally interfered with Eurus and Ichinotsubo's business;

(b) enter an Order that defendants have collectively and individually intentionally interfered with Eurus and Ichinotsubo's contractual relations with others;

(c) enjoin defendants from further interference with Eurus and Ichinotsubo's business and contractual relations with others;

(d) award plaintiffs damages in an amount to be proven at trial in excess of $75,000;

(e) award punitive damages;

(f) award plaintiffs' attorneys' fees and expenses;

(g) award plaintiffs' costs;

(h) declare that the Antara shares issued to Suzuki, Genesys and Genesys-related persons should be cancelled and voided;

(i) declare that the commission paid to Suzuki is contrary to law and must be repaid;

(j) declare that defendants must pay indemnification and/or contribution for any amount Eurus and/or Antara may be required to pay to Ohno or Ohkubo; and

(k) grant any and all other legal and equitable relief that this Court deems just and appropriate.

Dated: July 30, 2007  Respectfully submitted,


 /s/ Richard J. Oparil
Daniel F. S. Lee  673
Richard J. Oparil

*Attorneys for Plaintiffs/Counterclaim*
*Defendants Eurus Genomics, Inc. and*
*Dana Ichinotsubo and Plaintiff Antara Biosciences, Inc.*

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served on July 30, 2007 by email on the following:

>Duane R. Miyashiro, Esq.
>(dmiyashiro@carlsmith.com)
>John P. Dobrovich, Jr., Esq.
>(jdobrovich@carlsmith.com)
>
>*Attorneys for Defendants/Counterclaim Plaintiff*

> /s/ Richard J. Oparil
>Daniel F.S. Lee
>Richard J. Oparil
>
>*Attorneys for Plaintiffs/Counterclaim Defendants*
>*Eurus Genomics, Inc. and Dana Ichinotsubo*
>*and Plaintiff Antara Biosciences, Inc.*